**CONSUMER WATCHDOG**
Jerry Flanagan (SBN: 271272)
jerry@consumerwatchdog.org
Benjamin Powell (SBN: 311624)
ben@consumerwatchdog.org
Ryan Mellino (SBN: 342497)
ryan@consumerwatchdog.org
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel: (310) 392-0522
Fax: (310) 392-8874

**BLOOD HURST & O'REARDON, LLP**
Timothy G. Blood (SBN: 149343)
TBlood@bholaw.com
501 W. Broadway, Suite 1490
San Diego, CA 92101
Tel: (619) 338-1100
Fax: (619) 338-1101

**LAW OFFICES OF KELLY AVILES**
Kelly Aviles (SBN: 257168)
kaviles@opengovlaw.com
1502 Foothill Blvd., Suite 103-140
La Verne, CA 91750
Tel: (909) 991-7560
Fax: (909) 991-7594

**LOS ANGELES TIMES
COMMUNICATIONS LLC**
Jeff Glasser (SBN: 252596)
jeff.glasser@latimes.com
2300 E. Imperial Highway
El Segundo, CA 90245
Tel: 213-237-7077

**Attorneys for Applicants**

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| **IN RE APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS** | Misc. Case No. 2:24-mc-28 |
| | Related to Case Nos. 2:21-cr-540-SB, 2:22-cr-00009-SB, 2:21-CR-00559-PA, 2:21-CR-00572-FMO |
| | **APPLICATION TO UNSEAL COURT RECORDS** |

**NATURE OF THE ACTION**

1.      Applicants Consumer Watchdog and Los Angeles Times Communications LLC ("*Los Angeles Times*") respectfully move this Court for an order unsealing 33 search warrants and related documents executed by the Federal Bureau of Investigation ("FBI") in connection to what government prosecutors have called a "collusive litigation scheme," extortion, and subsequent cover-up involving the Los Angeles City Attorney's Office and the Los Angeles Department of Water and Power ("DWP"). Applicants are informed and believe that the search warrants were issued by this Court during the period of 2019–2021 in connection with the federal criminal investigation into this misconduct. Pursuant to Local Rule 79-7.2, Applicants respectfully request an order unsealing the search warrant applications, any supporting affidavits, the search warrants themselves, the returns, the docket sheets, and any related judicial records (the "warrant materials").

2.      This case concerns a tale as old as time—corrupt and unethical behavior by public officials after mismanagement at a public utility. While the broad strokes of the story here are largely known, the public has a significant interest in the important details provided in the warrant materials. The public knows the actors, City Attorney Mike Feuer and his two top deputies, among other City of Los Angeles ("City") officials and individuals acting on behalf of the City, mitigating any potential privacy concerns. As described *infra*, there were two key underlying acts of misconduct committed by City Attorney's Office personnel—(1) creating and resolving on favorable terms a sham lawsuit against the City, and (2) aiding and abetting extortion in order to cover up the sham lawsuit.

3.      **Sham lawsuit:** In 2013–14, after consulting with PricewaterhouseCoopers ("PwC"), the DWP rolled out a new billing system that failed spectacularly, leading to multiple class action suits against the City by the end of 2014. Rather than try to resolve the situation by compensating ratepayers, the City hatched a plan with its retained Special Counsel to engineer a sham lawsuit by a

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

ratepayer against the City, *Jones v. City*, which the City would be able to resolve on favorable terms while shifting blame to PwC in a separate lawsuit for damages, *City v. PwC*. *Jones v. City* ultimately did resolve on favorable terms for the City, and PwC's lawyers were stonewalled for years in their efforts to obtain information through discovery demonstrating the collusive origins of the litigation.

4.     **Extortion:** In November 2017, the City learned that a former employee of its Special Counsel had taken documents revealing the collusive nature of *Jones v. City*, and was threatening to produce the documents to PwC's lawyers at a December 4, 2017 hearing in *City v. PwC*. The City frantically tried to prevent the employee from producing the documents, culminating in a December 1, 2017 meeting involving "senior members of the City Attorney's Office," wherein it was agreed to pay off the employee. Ultimately, the City Attorney's Office successfully pressured Special Counsel to pay off the employee to the tune of $800,000.

5.     The recent conclusion of a years-long federal criminal investigation into this misconduct has "prompt[ed] a new round of questions [with c]ritics ask[ing] why certain individuals — including high-ranking personnel in the city attorney's office who remain unidentified in prosecutors' public court filings — escaped punishment."[1] Indeed, only one member of the City Attorney's Office was charged with a crime, leading a former prosecutor to remark: "*This investigation [was] unusual because 'there are a lot of unanswered questions about who did what and why . . . . It remains unresolved, in the eyes of the public.*'"[2] Similarly, Central District Judge Stanley Blumenfeld, who oversaw the sentencing of Special Counsel

---

[1] Dakota Smith, *Questions, anger after feds signal an end to DWP billing probe* ("*Questions, anger*"), L.A. Times, Sept. 20, 2023, https://www.latimes.com/california/story/2023-09-20/los-angeles-dwp-billing-investigation-ending-questions-remain. (Attached as Exhibit 1 to the Declaration of Jerry Flanagan ["Flanagan Decl."], filed concurrently to the Notice of Motion/Motion and Memorandum of Points and Authorities.)
[2] *Id.*

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

Paul Paradis, noted that "too few people have been held to account."[3] Other former prosecutors "saw avenues for possible criminal charges, including obstruction of justice, based on the public facts."[4]

6.    There is a high degree of public interest in making these documents available to the public. In particular, the public has an interest in accessing the warrant materials in order to determine the knowledge, actions, and conduct of former Los Angeles City Attorney Mike Feuer, who served as City Attorney until December 2022, and is currently running for the United States House of Representatives in California's 30th Congressional District.[5]

## THE WARRANT MATERIALS

7.    According to the government, the warrant materials "chronicle the government's extensive, years-long investigation into potential and actual criminal conduct stemming from the collusive litigation scheme and related matters," and show "the identities of the attorneys and City officials under investigation . . . and evidence regarding their alleged conduct . . . ."[6]

8.    Upon information and belief, the search warrants at issue here were filed in connection with a federal criminal investigation by the United States Attorney's Office for the Central District of California ("USAO") and the FBI, which commenced around March 2019. Many of the search warrants were likely issued in connection with raids conducted on a number of Los Angeles City agencies

---

[3] Transcript of Sentencing Hearing at 34:24–25, *United States v. Paradis*, No. 2:21-cr-00540-SB, Nov. 7, 2023, ECF No. 108 ("Paradis Sentencing Transcript"). (Attached as Exhibit 2 to the Flanagan Decl.)

[4] *Questions, anger*, *supra* note 1.

[5] *Mike Feuer*, Ballotpedia, https://ballotpedia.org/Mike_Feuer. (Attached as Exhibit 3 to the Flanagan Decl.)

[6] Government's Motion to Intervene for the Limited Purpose of Opposing Plaintiff's Motion to Compel Confidential Criminal Sentencing Discovery and to Quash Plaintiff's Subpoena to Defendant Paul Paradis at 5:5–10, *Bradshaw v. City of Los Angeles*, No. 2:19-cv-06661-GW(MARx), Aug. 22, 2023, ECF No. 290 ("Motion to Quash"). (Attached as Exhibit 4 to the Flanagan Decl.)

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

on July 22, 2019, including the "DWP headquarters on Hope Street . . . the offices of City Atty. Mike Feuer a few blocks away at City Hall," and the office of Special Counsel Paul Kiesel,[7] though Applicants are unable to determine the exact number of locations raided based on the public record. A spokesman for the City Attorney's Office acknowledged that "the FBI served search warrants for documents on several city employees at (City Hall East) and DWP offices, including some of our staff members . . . relat[ing] to issues that have arisen over the class-action litigation and settlement surrounding the DWP billing system and the city's lawsuit against (PricewaterhouseCoopers)."[8]

9.     Applicants understand that all 33 search warrants at issue were filed with Central District Judge Stanley Blumenfeld on June 13 and June 20, 2023, as part of former Special Counsel Paul Paradis's sentencing discovery attached to his sentencing memorandum in the case *United States v. Paradis*, 2:21-cr-00540-SB.[9] According to the USAO, around 1,390 of the 1,451 total pages in the sentencing discovery consisted of the warrant materials at issue here, or approximately 96%.[10]

---

[7] Dakota Smith, David Zahniser, Alene Tchekmedyian, & Laura J. Nelson, *FBI raids at DWP, L.A. City Hall related to fallout from billing debacle* ("*FBI raids at DWP*"), L.A. Times, July 22, 2019, https://www.latimes.com/california/story/2019-07-22/fbi-searches-dwp-headquarters-in-downtown-l-a. (Attached as Exhibit 5 to the Flanagan Decl.)

[8] City News Service, *FBI Probe, Raids of DWP Reportedly Involve Cybersecurity*, NBC Los Angeles, Aug. 10, 2019, https://www.nbclosangeles.com/news/fbi-probe-into-dwp-reportedly-involves-cybersecurity/131307/. (Attached as Exhibit 6 to the Flanagan Decl.) Applicants understand that part of the FBI raid on DWP headquarters concerned "information about security issues at [DWP]" unrelated to the scandal. *Id.* To the extent the warrant materials here relate to those security issues, Applicants are not seeking unsealing.

[9] To be clear, however, Applicants are not seeking to obtain the warrant materials through the *Paradis* case or his filed discovery—Applicants seek the warrant materials as filed with the court pursuant to the court's own supervisory authority to manage its records. Applicants are simply identifying the simplest way for the court to determine the exact warrant materials at issue.

[10] Motion to Quash at 5, n.2, *supra* note 6. The remaining discovery included 58 pages of FBI reports, and three pages listing recordings made by Paradis, which

Applicant *Los Angeles Times* reviewed an excerpt of at least one of the search warrants on July 22, 2019, which had been filed the previous week.[11]

10.     The warrant materials will shed light on critical questions concerning the roles played by the different participants in the scandal. The key City Attorney's Office personnel in this "incredibly sordid affair"[12] were Mike Feuer, the City Attorney, and his two top deputies, Jim Clark and Thomas Peters. Throughout the scandal, Mr. Feuer was the Los Angeles City Attorney.[13] Mr. Peters was the Chief Assistant City Attorney, and Chief of the Civil Litigation Branch of the City Attorney's Office, and reported directly to Mr. Clark, the Chief Deputy City Attorney until retiring in 2020, who reported directly to Mr. Feuer.[14] Mr. Clark stated he would normally meet with Mr. Feuer "twice a week" and "advise[] [him] of what's going on."[15] Mr. Clark and Mr. Feuer had a longstanding professional relationship—Mr. Feuer served as the executive director of Bet Tzedek from the mid-1980s through 1994,[16] while Mr. Clark was president of Bet Tzedek from 1990 to 2013,[17] before leaving to join Mr. Feuer at the City Attorney's Office.

11.     Other key figures include: (1) Paul Paradis, who was retained as the

---

are not being sought here. *Id.*

[11] *FBI raids at DWP*, *supra* note 7.

[12] Transcript of Sentencing Hearing at 10:9, *United States v. Peters*, No. 2:22-cr-00009-PA, May 9, 2023, ECF No. 63 ("Peters Sentencing Transcript"). (Attached as Exhibit 7 to the Flanagan Decl.)

[13] Special Master Edward M. Robbins, Jr., *Report on The Investigation Into Any Violations Surrounding The Case and Action of Jones v. City of Los Angeles and Related Cases*, April 2021, Vol. III, at 120 ("*Special Master's Report*"). (Volumes I–III of the *Special Master's Report* are attached as Exhibit 8 to the Flanagan Decl.)

[14] *Id.* at 120, 122; see also *Questions, anger*, *supra* note 1.

[15] *Special Master's Report*, Vol. II, at 66, *supra* note 13.

[16] Jon Regardie, *Eight Short Stories, and One Long One, About Mike Feuer*, DT News, updated Aug. 27, 2014, https://www.ladowntownnews.com/news/eight-short-stories-and-one-long-one-about-mike-feuer/article_6d1e4190-9e43-11e2-a554-001a4bcf887a.html. (Attached as Exhibit 9 to the Flanagan Decl.)

[17] *Special Master's Report*, Vol. III, at 120, *supra* note 13.

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

City's Special Counsel, was "at the center of corruption on multiple fronts," spent the last four-plus years cooperating with investigators looking into the scandal, and pled guilty to bribery charges related to the scandal;[18] (2) Paul Kiesel, who worked alongside Mr. Paradis as Special Counsel for the City and participated in the collusive litigation and extortion;[19] (3) Leela Kapur, Mr. Feuer's chief of staff;[20] (4) Joseph Brajevich, DWP General Counsel and Senior Assistant City Attorney starting in 2016;[21] and (5) David Wright, DWP General Manager, who was sentenced to six years in federal prison for accepting bribes from Mr. Paradis.[22]

## **INTEREST OF APPLICANTS**

12.     Applicant the *Los Angeles Times* is the largest metropolitan daily newspaper circulated in California and one of the largest daily newspapers in the United States. Through its daily publication and information website, www.latimes.com, the *Los Angeles Times* publishes news to audiences throughout California and across the nation. The *Los Angeles Times* has extensively reported on and played a key role in keeping the public informed about this investigation into serious public misconduct and corruption.

13.     Applicant Consumer Watchdog is a nationally recognized, California-based non-profit group organized to provide an effective voice for American consumers in an era when special interests dominate public discourse, government, and politics. One of Consumer Watchdog's chief missions is to investigate corruption and other unethical behavior by elected officials and politicians and report this information to the public. Consumer Watchdog does so by researching

---

[18] Paradis Sentencing Transcript, 3:22–25, 11:12–13, 18:15–17, *supra* note 3.

[19] *Special Master's Report*, Vol. I at 5, *supra* note 13.

[20] *Questions, anger*, *supra* note 1.

[21] *Special Master's Report*, Vol. I at 4, *supra* note 13.

[22] Press Release, USAO, *Former LADWP Executive Sentenced to Four Years in Federal Prison for Lying to FBI About Secret Business Relationship with Lawyer*, June 7, 2022, https://www.justice.gov/usao-cdca/pr/former-ladwp-executive-sentenced-four-years-federal-prison-lying-fbi-about-secret. (Attached as Exhibit 10 to the Flanagan Decl.)

and investigating evidence of bad actors through both legal and non-legal channels, and educating the public through investigative reports, blogs, news releases, online videos, contributing to news stories published in the state's largest newspapers, and participating in television news reports and radio news broadcasts. Consumer Watchdog's website, www.ConsumerWatchdog.org, has approximately 20,000 visitors per month. Consumer Watchdog has 80,000 Facebook fans and over 6,956 Twitter followers. Consumer Watchdog has conducted public education and advocacy to increase public accountability of state and local officeholders over the last three-and-a-half decades including by:

    a. Investigating the DWP ratepayer billing scandal, collusive litigation, and subsequent cover-up at issue in this Application for nearly a decade, beginning with a 2015 letter to then-Mayor Eric Garcetti and then–City Attorney Feuer.[23] Consumer Watchdog has been closely involved in monitoring the unfolding scandal and seeks to uncover more information to enhance the public's ability to assess how to apportion the blame. For example, Consumer Watchdog was the first organization to reveal that Mr. Feuer was being investigated by the State Bar.[24] Access to the warrant materials will further Consumer Watchdog's mission to inform the public about acts of public corruption.

---

[23] Dakota Smith, *Red Flags Missed? Critics Raised Concerns Years Ago About DWP Lawsuit Settlement*, L.A. Times, Feb. 10, 2022, https://consumerwatchdog.org/in-the-news/red-flags-missed-critics-raised-concerns-years-ago-about-dwp-lawsuit-settlement/. (A link to Consumer Watchdog's 2015 letter appears in the news article.) (The article and letter are attached as Exhibit 11 to the Flanagan Decl.)

[24] Press Release, Consumer Watchdog, *Mike Feuer Under State Bar Investigation According to Bar Documents and Sources, Consumer Watchdog Reveals*, Sept. 16, 2021, https://consumerwatchdog.org/accountability/mike-feuer-under-state-bar-investigation-according-to-bar-documents-and-sources-consumer-watchdog-reveals/. (Attached as Exhibit 12 to the Flanagan Decl.)

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

b. Authoring a report detailing the so-called DWP "Ratepayer Advocate" Fred Pickel's failure to protect consumers during the ratepayer billing scandal[25] and Mr. Pickel's earlier backing of a self-dealing ballot measure to amend the Los Angeles City Charter that was ultimately rejected by voters.[26]

c. Exposing the hidden hand of the utility, oil, and gas industries over state policymaking at the Public Utilities Commission ("PUC") and in the state Capitol through investigative reports and creation of a website, PUCPapers.org. The website published thousands of primary source documents and emails exchanged between PG&E and other utility executives and government officials that were unearthed in a corruption scandal that led to the criminal investigation of PUC President Michael Peevey and scrutiny of other PUC Commissioners.

d. Authoring investigative reports such as *Power Play*, chronicling how Sempra shareholders profited wildly from the favorable decisions taken by Governor Brown's appointees. Governor Brown's sister Kathleen Brown, a Sempra board member, made more than $1 million in cash and stock after joining the board.

e. Launching LA Watchdog to uncover the public impact of political influence at the Los Angeles Department of Water and Power and City Hall.

f. Uncovering influence peddling of former California Insurance

---

[25] Press Release, Consumer Watchdog, *New Report: LADWP's Ratepayer Advocate Is Costing Angelenos Nearly $7 Billion Extra and Should Be Fired,* March 14, 2018, https://consumerwatchdog.org/energy/new-report-ladwps-ratepayer-advocate-costing-angelenos-nearly-7-billion-extra-and-should-be/. (Attached as Exhibit 13 to the Flanagan Decl.)

[26] Press Release, Consumer Watchdog, *Self-Dealing in Charter Measure RRR Exposed By LA Times*, Nov. 7, 2016, https://consumerwatchdog.org/uncategorized/self-dealing-charter-measure-rrr-exposed-la-times/. (Attached as Exhibit 14 to the Flanagan Decl.)

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

Commissioner Chuck Quackenbush, which ultimately resulted in his resignation from office.

    g.  Filing complaints with the state ethics watchdog, the Fair Political Practices Commission (FPPC), resulting in fines for financial conflicts of interest and reporting violations by numerous public officials and entities.

14.    Applicants' interests in the warrant materials include the charging decisions made by the USAO. Only one member of the City Attorney's Office was prosecuted in connection with the scandal, despite other senior members of the City Attorney's Office being involved and directly implicated in government filings, leading to both public and legal criticism.[27] Meanwhile, Mr. Feuer requested and received from the USAO an August 19, 2022 letter ("USAO letter") stating that there was no "ongoing investigation" into his conduct in the scandal.[28] Mr. Feuer has continued to point to this letter as proof of his lack of wrongdoing.[29]

15.    Among other considerations, Applicants and the public have a legitimate interest in determining what kind of evidence the government had and whether it nevertheless "pulled its punches" in deciding not to prosecute certain individuals. *In re Los Angeles Times Commc'ns LLC*, 628 F. Supp. 3d 55, 66 (D.D.C. 2022).

## **JURISDICTION**

16.    "Every court has supervisory power over its own records and files[.]"

---

[27] *Questions, anger*, *supra* note 1.

[28] Eric Leonard, *LA City Attorney Not a Target of DWP Corruption Investigation, Feds Say*, NBC Los Angeles, Aug. 23, 2022, https://www.nbclosangeles.com/investigations/la-city-attorney-mike-feuer-not-target-ladwp-corruption-investigation/2970210/. (The article and USAO letter are attached as Exhibit 15 to the Flanagan Decl.)

[29] Dakota Smith, *Key lawyer in DWP corruption scandal gets 33-month prison sentence* ("*Key lawyer*"), L.A. Times, Nov. 7, 2023, https://www.latimes.com/california/story/2023-11-07/lawyer-dwp-scandal-33-month-prison-sentence. (Attached as Exhibit 16 to the Flanagan Decl.)

1  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). "[W]arrant materials
2  are 'judicial records and documents.'" *United States v. Bus. of Custer Battlefield*
3  *Museum & Store*, 658 F.3d 1188, 1193 (9th Cir. 2011) (*quoting Nixon*, 435 U.S. at
4  597). As a result, this Court has "jurisdiction in the first instance to adjudicate a
5  claim of right" to inspect those records. *In re Motion for Release of Court Records*,
6  526 F. Supp. 2d 484, 487 (FISA Ct. 2007).

7  ## BACKGROUND FACTS

8  **A.  Billing Debacle at the DWP Leads the City to Create a Sham Lawsuit**

9         17.    The origins of the scandal lie in the botched launch of a new Customer
10  Information System ("CIS") rolled out by the DWP in 2013–14.[30] "As part of the
11  new CIS the DWP replaced its forty-year-old billing system with a new [billing
12  system—the "CC&B System"] configured and implemented by [PwC]." "By the
13  end of 2014, the City had lost hundreds of millions of dollars in unclaimed revenue
14  due to billing problems with the CC&B System and had suffered from scathing and
15  relentless attacks in the media about the billing debacle,"[31] and the DWP was
16  "enmeshed in a public relations firestorm resulting from the DWP's ongoing failure
17  to provide reliable billing services to its over 1.5 million ratepayers."[32] Four class
18  action lawsuits were filed against DWP and the City in response.[33] A
19  contemporaneous report commissioned by the City found that the problems with
20  CIS were primarily attributable to DWP, with the "CC&B System largely escap[ing]
21  blame."[34]

22         18.    Despite the report's finding that the CC&B was largely blameless, the
23  "City Attorney's Office [], along with retained Special Counsel . . . hatched a three-
24  part plan beginning in December 2014, to take control of the ever-worsening DWP

25  _____
26  [30] *Special Master's Report*, Vol. I, at 2, *supra* note 13.
   [31] *Id.* at 3.
27  [32] *Id.* at 4.
   [33] *Id.* at 3.
28  [34] *Id.* at 2–3.

- 11 -

billing debacle," with step one being "shifting blame in the press from DWP to [PwC]," and step two being "suing PwC for damages," which became the case *City v. PwC*.[35] The final step of the plan was "getting rid of the other class action suits filed against the City through orchestrating a competing class action suit to become the lead suit, filed by a ratepayer client [Antwon Jones] who had unknowingly retained the City's Special Counsel."[36] This orchestrated lawsuit was intended to be brought on behalf of Jones against PwC, with the case being *Jones v. PwC*.[37] "By mid-February 2015, Michael Feuer, James Clark, [and] Thomas Peters . . . knew most or all of this three-part plan."[38]

19.    However, after objections to the plan were raised by the City's outside counsel, the City decided to pursue an "even more nefarious" plan.[39] The City decided "to drop *Jones v. PwC* and swap in *Jones v. City*, a 'white knight' suit that would be the prime class action and would sideline the other ratepayer class action suits then pending against the City."[40] "The City was motivated to create *Jones v. City* as a vehicle for ending its public relations problem from the DWP's billing fiasco, for getting rid of the other class action cases, and for settling the ratepayer claims on terms it dictated with the imprimatur of a court settlement."[41] In other words, rather than admit fault and try to fix the problem head-on, the "city attorney's office, seeking to play the hero, swooped in [and] crafted a sham lawsuit over the faulty DWP bills[.]"[42] *Jones v. City* was filed on April 1, 2015, and the City publicly announced the settlement of the case the week of June 16, 2015,[43] "on terms and a

---

[35] *Id.* at 4.
[36] *Id.*
[37] *Id.*
[38] *Id.* at 5.
[39] Peters Sentencing Transcript, 11:10, *supra* note 12.
[40] *Special Master's Report*, Vol. I, at 5, *supra* note 13.
[41] *Id.* at 6.
[42] *Questions, anger*, *supra* note 1.
[43] *Special Master's Report*, Vol. I, at 25, 29, *supra* note 13.

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

schedule that had secretly been dictated by the City Attorney's office."[44]

20.     It did not take long for questions to be raised about the "City's egregious plan."[45] On June 26, 2015, Tim Blood, acting as counsel for ratepayers suing the City, wrote a letter to Mr. Feuer to memorialize his concern that "the City Attorney's Office has engaged in a prohibited reverse auction of a class action settlement," and describe his "shock[ at] the manner in which the City and the DWP are handling this purported settlement[.]"[46] The letter describes a call Mr. Blood had with Mr. Feuer and Mr. Clark the previous day, where, "Mr. Feuer and Mr. Clark seemed very upset, yelled at Mr. Blood, and acted irrationally[.]"[47] "Blood's letter put Mr. Feuer on notice of the problematic nature of the settlement."[48] With the benefit of hindsight, it is clear that Mr. Blood's concerns were entirely justified, with Special Master Robbins commenting that "Blood's instincts were good given his limited information."[49]

21.     Substantial questions remain unanswered concerning the sham lawsuit, and the answers likely lie in the warrant materials, which were produced during an investigation into this exact issue. Questions remain given that the City's public position throughout—that the Special Counsel "went 'rogue'"—was specifically rejected by the Special Master "[because] the evidence supports a finding that the City directed and assisted in the City suing itself with a sham lawsuit."[50] Similarly,

---

[44] Sentencing Memorandum of Paul O. Paradis, *United States v. Paradis*, No. 2:21-cr-00540-SB, June 13, 2023, ECF No. 43 ("Paradis Sentencing Memorandum"), Exhibit D, Paul O. Paradis Letter to the Honorable Stanley Blumenfeld Jr., June 13, 2023, ECF No. 43-4, at 2. (Attached as Exhibit 17 to the Flanagan Decl.)
[45] *Special Master's Report*, Vol. I, at 5, *supra* note 13.
[46] Letter from Tim Blood to Mike Feuer, *Re: Bransford, et al. v. City of Los Angeles, Case No. BC565618*, June 26, 2015, https://ca-times.brightspotcdn.com/a4/78/c0de65b84c108bc492a47c7accfb/00086574-7.PDF.  (Attached as Exhibit 18 to the Flanagan Decl.)
[47] *Special Master's Report*, Vol. II, at 197, *supra* note 13.
[48] *Id.* at 199.
[49] *Id.*
[50] *Id.*, Vol. I, at 6.

"[p]rosecutors, in court filings, have referenced [but not identified] other 'top city attorney's office personnel' who directed the legal scheme[.]"[51] This raises obvious questions—what "top city attorney's office personnel" "directed the legal scheme" and "assisted the City in suing itself with a sham lawsuit"? The public needs access to the warrant materials, as the bases for the prosecutors' statements and answers to these questions are almost certainly contained therein.

22.    Additionally, substantial questions exist concerning the degree to which Mr. Feuer was aware of, authorized, or directed the sham lawsuit. The Special Master found both that the City's "Special Counsel were aware of the need for, and would only take certain action with, Mr. Feuer's approval,"[52] and "that Mr. Feuer was being briefed on strategy in *Jones v. City*."[53] Did Mr. Feuer knowingly approve of the City's plan to sue itself with a sham lawsuit? Was he informed during strategy briefings about the collusive nature of *Jones v. City*? Did Mr. Feuer, who has claimed to "take any allegation of improper conduct by any attorney under our authority -- including outside counsel -- extremely seriously"[54] conduct any internal follow-up or investigation after Mr. Blood expressed his concerns over the unethical nature of the City's conduct on the 2015 phone call and in the subsequent letter? The answers to all these questions of paramount public interest are likely found in the warrant materials.

23.    Further, both Mr. Paradis and Mr. Kiesel, the City's Special Counsel, have accused the City of authorizing and directing the collusive litigation. Mr. Paradis stated that Mr. Clark "directed and authorized" the creation of the collusive

[51] Dakota Smith & Richard Winton, *Attorneys under investigation by State Bar in DWP billing scandal*, L.A. Times, June 27, 2023, https://www.latimes.com/california/story/2023-06-27/state-bar-investigation-paradis-city-attorney-office. (Attached as Exhibit 19 to the Flanagan Decl.)
[52] *Special Master's Report*, Vol. II, at 327, *supra* note 13.
[53] *Id*. at 189.
[54] Justin Kloczko, *LA city attorney opens ethics review*, Daily Journal, Mar. 11, 2019, https://www.dailyjournal.com/articles/351510-la-city-attorney-opens-ethics-review. (Attached as Exhibit 20 to the Flanagan Decl.)

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

litigation[55] and the "entire strategy after clearing it with Mike Feuer,"[56] while Kiesel "testified that the City not only knew of the collusive *Jones v. City* filing and settlement, but directed it[.]"[57] Any evidence corroborating these credible allegations is likely contained in the warrant materials, and the public needs and has a right to know details regarding Mr. Feuer's and other top City and DWP personnel's knowledge of and participation in the collusive litigation and attempted cover-up.

24.     Finally, substantial questions linger concerning the charging decisions of the USAO. Despite a "years-long investigation," no one at the City Attorney's Office was prosecuted in connection with the sham lawsuit,[58] despite prosecutors' references to "'top city attorney's office personnel' who directed the legal scheme[.]" The public has a right and need to access the evidence in the warrant materials in order to effectively evaluate the charging decisions of the USAO.

**B.     The City Engages in Discovery Abuse and Orders Payment to an Extortionist in Order to Cover Up the Collusive Litigation**

25.     The City Attorney's Office's misconduct did not conclude with the collusive litigation. Beginning at the end of December 2015, the City embarked on a "long, calculated campaign of discovery abuse [in *City v. PwC*], including asserting unwarranted claims of privilege both in response to written discovery requests and during the deposition of Mr. Peters as the City's PMQ witness and lying to the Court."[59] The "campaign was designed primarily to keep PwC from discovering" the collusive origins of *Jones v. City*.[60] Mr. Feuer expressed "'extreme

---

[55] Paradis Sentencing Memorandum, 13:25–27, *supra* note 44. Mr. Clark continues to "den[y] any knowledge of the scheme." *Questions, anger*, *supra* note 1.

[56] *Special Master's Report*, Vol. II, at 378, *supra* note 13.

[57] *Id.* at 377.

[58] Mr. Peters ultimately pled guilty to a felony on other grounds, as "Peters [wasn't] involved . . . in devising the collusive arrangement." *Peters Sentencing Transcript*, 12:14–16, *supra* note 12.

[59] *Special Master's Report*, Vol. I, at 33:8–23, *supra* note 13.

[60] *Id.*

concern' about the PwC discovery."[61] Questions remain concerning which City Attorney's Office personnel directed or authorized the City's "campaign of discovery abuse," and whether Mr. Feuer's "'extreme concern' about the PwC discovery" was because Mr. Feuer knew PwC would likely discover the collusive origins of *Jones v. City*. The answers likely lie in the warrant materials, and the public has a right to know.

26.     On November 16 or 17, 2017, Mr. Peters was told by Mr. Paradis that a former employee of Mr. Kiesel had obtained documents revealing the collusive lawsuit, and was threatening to reveal the city's misconduct at a December 4, 2017, hearing, wherein PwC was seeking information about the collusive litigation, unless the employee was paid off.[62] Shortly thereafter, on December 1, 2017, Mr. Peters "met with other senior members of the City Attorney's Office and provided an update on the status of the [extortion demand]," including directly using the word "extortion."[63] At the meeting, ". . . Peters was directed to take care of the situation . . . ."[64] As reported by Applicant *Los Angeles Times*: "Feuer's calendar for Dec. 1, 2017, shows a scheduled meeting that afternoon with Peters, Feuer's chief of staff Kapur, and Joseph Brajevich, a city attorney and general counsel to the DWP."[65] Later that day, Mr. Peters sent Mr. Paradis a text stating "Mike [Feuer] is not firing anyone at this point. But he is far from happy about the prospect of a sideshow."[66]

[61] *Id.*, Vol. II, at 356.
[62] Plea Agreement for Defendant Thomas H. Peters, Attachment A, at 30, *United States v. Peters*, No. 22-cr-00009-PA, Jan. 10, 2022, ECF No. 7 ("Peters Plea Agreement, Attachment A"). (Attached as Exhibit 21 to the Flanagan Decl.)
[63] *Id.* at 32:8–17.
[64] *Id.* at 32:18; *see also* Information at 12:2–3, *United States v. Peters*, No. 22-cr-00009-PA, Jan. 10, 2022, ECF No. 1 ("Peters had discussed the [extortion] situation with and received direction from senior members of the City Attorney's Office."). (The Information is attached as Exhibit 22 to the Flanagan Decl.)
[65] *Questions, anger, supra* note 1.
[66] Paul O. Paradis Complaint Against Michael N. Feuer, Office of Chief Trial Counsel of the State Bar of California ("State Bar Complaint"), Feb. 7, 2022, at 6:15–16. (Attached as Exhibit 23 to the Flanagan Decl.)

Subsequently, after Mr. Peters threatened to fire Mr. Kiesel as Special Counsel if the extortion demand was not resolved, Mr. Kiesel paid off the former employee to the tune of $800,000.[67]

27.   Although it seems clear that Mr. Peters met with Mr. Feuer and discussed the extortion demand, and a spokesman for Mr. Feuer has weakly acknowledged that "it appears" Mr. Feuer attended the meeting, Mr. Feuer's public position is that he "has no specific recollection of that meeting . . . but certainly was not informed at that time, or any time, of any criminal malfeasance,"[68] and that "I never attended any meeting in which there was discussion of an extortion threat to reveal collusive litigation in the DWP matter."[69] What is undisputed is that "Peters was directed to take care of" the extortion demand at a meeting with Mr. Feuer, Ms. Kapur, and Mr. Brajevich. Thus, while the public knows who was at the December 1, 2017, meeting, the key question remains unanswered—who directed Mr. Peters to "take care of the situation"? Did Mr. Feuer issue this order? This question is key not only to understanding the scale of misconduct that occurred at the City Attorney's Office, but also to evaluate the truthfulness of Mr. Feuer's claim that he was unaware of Mr. Peters's illegal actions until Mr. Peters entered his plea deal.[70] Recently, Mr. Paradis's attorney commented on "whether you're more

---

[67] Peters Plea Agreement, Attachment A, at 34, *supra* note 62.

[68] Eric Leonard, *DWP Scandal: What Did the LA City Attorney Know?*, NBC Los Angeles, Apr. 4, 2022, https://www.nbclosangeles.com/news/local/dwp-scandal-what-did-the-la-city-attorney-know/2862816/. (Attached as Exhibit 24 to the Flanagan Decl.)

[69] *Questions, anger*, *supra* note 1; *see also* Dakota Smith, *Attorney awaiting sentencing in DWP case accuses Feuer of aiding extortion, perjury*, L.A. Times, Mar. 7, 2022, https://www.latimes.com/california/story/2022-03-07/feuer-complaint-paul-paradis-dwp ("'[Feuer] has never heard of this woman who apparently worked for Mr. Kiesel and has no recollection of being made aware of a complaint by her' to anyone in the city attorney's office, said Wilcox, the spokesman for Feuer. Wilcox also said Feuer 'knew nothing about the extortion threat and the [Dec. 1, 2017] text does not purport that he did.'"). (The March 7, 2022 news article is attached as Exhibit 25 to the Flanagan Decl.)

[70] Dakota Smith & David Zahniser, *Former high-level lawyer with L.A. city*

culpable [than Paradis] if you're an elected official and you send Tom Peters into battle to help your political career,"[71] which appeared to implicate Mr. Feuer. Evidence in the warrant materials likely reflects whether or not Mr. Feuer knew of or directed Mr. Peters's actions.

28.   Additionally, "[s]ome attorneys watching the government's case said in particular they did not understand why prosecutors didn't bring more criminal charges over [the] extortion scheme that ensnared Peters, Feuer's former chief of the civil litigation branch."[72] While the public does not know who exactly directed Mr. Peters's actions, the public does know "senior members of the City Attorney's Office" were responsible, yet no senior member was charged for what is undeniably criminal conduct—ordering a subordinate to aid and abet extortion. The public has a right and need to access the warrant materials to evaluate why "prosecutors didn't bring more criminal charges over [the] extortion scheme," despite having apparently identified other culpable individuals.

**C.    The City's Cover-Up Unravels and the Public Learns of the Scandal After FBI Raids on the DWP and City Attorney's Office**

29.   While the City was able to stay its date of execution for a time by acquiescing to extortion, the dam broke in early 2019 after multiple court-ordered depositions and disclosures of documents. In one of the City's last attempts to continue the cover-up, Mr. Clark and Mr. Peters attempted to sabotage a request for documents and a PMQ deposition of Mr. Clark scheduled for February 26, 2019, wherein Mr. Peters represented Mr. Clark on behalf of the City "in a matter of extreme sensitivity and interest to the City and the City Attorney, Mr. Feuer."[73]

---

*attorney agrees to plead guilty in DWP scandal*, L.A. Times, Jan. 10, 2022, https://www.latimes.com/california/story/2022-01-10/thom-peters-la-city-attorneys-office-dwp-scandal-plea-agreement. (Attached as Exhibit 26 to the Flanagan Decl.)

[71] Paradis Sentencing Transcript, 20:6–8, *supra* note 3.

[72] *Questions, anger, supra* note 1.

[73] *Special Master's Report*, Vol. II, at 356, *supra* note 13.

Mr. Peters intentionally failed to produce emails responsive to the document request,[74] while Mr. Clark took and subsequently destroyed several pages of notes before "repeatedly [stating] he could not remember who furnished him with specific information" at the deposition.[75]

30.    Subsequently, "[o]n March 14, 2019, Mr. Clark signed an errata sheet to 'correct' over 50 of his original, truthful testimony statements originally confirming many aspects of the collusion after he met with the City's other lawyers to discuss his deposition testimony."[76] Several of these errata involved Mr. Clark recanting testimony that he had told Mr. Feuer certain things; namely, that "he was 'sure' that he had apprised Mr. Feuer of the existence of the draft *Jones v. PwC* complaint,"[77] and that he had reported the decision not to file *Jones v. PwC* to Mr. Feuer.[78] Shortly thereafter, on March 22, 2019, Mr. Peters resigned,[79] though "[d]espite the evidence of malfeasance by members of the [City Attorney's Office] in the *Jones v. City* and *City v. PwC* cases . . . [t]here is no evidence Mr. Peters's resignation from the City Attorney's Office was triggered by his actions in these cases."[80]

31.    The public is left with substantial questions concerning the awareness of Mr. Feuer and other City Attorney's Office personnel of Mr. Clark's and Mr. Peters's unethical conduct, as well as the reasons Mr. Clark changed his truthful testimony to untruthful testimony after a meeting with the "City's other lawyers." Questions also remain concerning whether Mr. Feuer knew of Mr. Clark's and Mr. Peters's unethical actions, and whether Mr. Peters's resignation was influenced by his misconduct or if it was truly unrelated.

---

[74] *Id.* at 355–56.

[75] *Id.* at 358.

[76] *Id.*, Vol. I, at 10.

[77] *Id.*, Vol. II, at 66.

[78] *Id.* at 359.

[79] *Id.* at 373.

[80] *Id.* at 335.

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

32.    Although private parties had raised concerns for years over the City's conduct, the public did not learn of the scandal until the "shocking sight on a July morning in 2019 [of a]n FBI van parked outside Los Angeles City Hall and agents upstairs, scouring the headquarters of the city attorney's office."[81] In the years since, the sheer scope of the scandal has come into clearer view, with Judge Blumenfeld remarking that the "level of corruption and the extent of it is mind-boggling."[82] The scandal "corrupt[ed] the City Attorney's Office as well as the DWP" under Mr. Feuer's watch and "shattered public confidence in government and in the legal profession."[83] Although "three high-ranking . . . City officials have pled guilty"[84] in connection with the scandal, "too few people have been held to account[.]"[85] The USAO has confirmed that its investigation has concluded and that it does not plan to charge more individuals.[86]

**D.    The Warrant Materials Contain Critical Corroborating Evidence Concerning Misconduct by the City Attorney's Office and DWP**

33.    The Special Master appointed to investigate the scandal was ultimately unable "to reach a firm conclusion about the extent of Mr. Feuer's knowledge or participation in" the scandal because of a "lack of evidence, which arguably was a direct result of the fact that Mr. Clark was tasked by Mr. Feuer with overseeing the ratepayer class actions[.]"[87] Mr. Clark stated he "destroyed and/or kept no notes of his briefings of Mr. Feuer about 'significant' matters and did not recall if he spoke about the *Jones* settlement with Mr. Feuer," while "Mr. Feuer confirmed the lack of a paper trail on his discussions with Mr. Clark and testified that he had little or no recollection regarding the details of his knowledge of the *Jones* cases."[88] The Special

---

[81] *Questions, anger, supra* note 1.

[82] Paradis Sentencing Transcript, 35:3, *supra* note 3.

[83] *Id.*, 13:18–20.

[84] *Id.*, 32:2–3.

[85] *Id.*, 34:24–25.

[86] *Questions, anger, supra* note 1.

[87] *Special Master's Report*, Vol. I, at 38, *supra* note 13.

[88] *Id.*

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

Master noted that "repeated notations regarding calls also evidences that communications between Mr. Clark and Mr. Feuer regarding significant [City Attorney's Office] litigation matters were also done orally,"[89] and cited "[a] remarkable absence of communication between and among the City's attorneys in response to the filing of *Jones v. City*" as evidence of the cover-up.[90] The public has a right and a need to access the warrant materials in order to fill in the gaps in the Special Master's Report concerning Mr. Feuer's "knowledge and participation" that resulted from the lack of evidence available because the Special Master did not have access to the warrant materials while writing the report.

34.    On February 7, 2022, Special Counsel Paradis filed a publicly available complaint with the California State Bar concerning Mr. Feuer's misconduct. The complaint asserts that Mr. Feuer "aided and abetted extortion" in violation of federal and local law, and "committed the crime of perjury" in violation of state law.[91] The complaint further alleges that Mr. Feuer violated multiple Rules of Professional Conduct, and therefore requests the State Bar investigate Mr. Feuer to determine whether he should be disbarred.[92] The State Bar had already begun investigating Mr. Feuer as far back as 2019 in response to several complaints,[93] and has commented that the at least 16 attorneys "under investigation is 'the largest group by several factors of attorneys accused of misconduct,'"[94] including, *inter alia*, Mike

---

[89] *Id.*, Vol. II, at 189.

[90] *Id.*, Vol. I, at 7.

[91] State Bar Complaint, at 2, *supra* note 66.

[92] *Id.* at 3.

[93] Press Release, Consumer Watchdog, *Mike Feuer Under State Bar Investigation According to Bar Documents and Sources, Consumer Watchdog Reveals*, Sept. 16, 2021, https://consumerwatchdog.org/accountability/mike-feuer-under-state-bar-investigation-according-to-bar-documents-and-sources-consumer-watchdog-reveals/. (Attached as Exhibit 27 to the Flanagan Decl.)

[94] Blog, Consumer Watchdog, *Will the State Bar Hold Mike Feuer and Powerful Attorneys Accountable in the LADWP Billing Scandal?*, June 28, 2023, https://consumerwatchdog.org/accountability/will-the-state-bar-hold-powerful-attorneys-accountable-for-their-role-in-ladwp-billing-scandal/. (Attached as

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

Feuer, Case No. 22-O-00978; Jim Clark, Case No. 22-O-00980; Thomas Peters, Case No. 22-O-00981; Leela Kapur, Case No. 22-O-00979; and Joseph Brajevich, Case No. 22-O-00983.[95]

35.    Most recently, on November 7, 2023, Mr. Paradis stated in open court that FBI Special Agent Andy Civetti "testified in at least two . . . affidavits [contained in the warrant materials] that Mike Feuer testified falsely and perjured himself before a United States grand jury."[96] Mr. Paradis stated that Mr. Feuer "also made false statements to the FBI during interviews, and he testified falsely in connection with his civil deposition."[97] Mr. Paradis further noted that "Mr. Brajevich, Ms. Kapur, Mr. Clark were also mentioned extensively."[98] Judge Blumenfeld responded by acknowledging that "all that you are reporting were amply covered in the papers."[99] Mr. Paradis later spoke to reporters and confirmed that the FBI agent's determination "involves extortion and it also involves when Feuer knew about the collusive scheme. He lied about both."[100] Mr. Paradis's allegations were

Exhibit 28 to the Flanagan Decl.)

[95] Plaintiff Bradshaw's Lodging of Requested Documents at 2:21–3:21, *Bradshaw v. City of Los Angeles*, No. 2:19-cv-06661-GW(MARx), Sept. 6, 2023, ECF No. 312. (Attached as Exhibit 29 to the Flanagan Decl.)
[96] Paradis Sentencing Transcript, 27:2–4, *supra* note 3.
[97] *Id.* at 27:4 –6.
[98] *Id.* at 27:7–8.
[99] *Id.* at 27:12–13.
[100] Blog, Consumer Watchdog, *Former City Lawyer: FBI Determined Feuer Lied About Knowledge of Extortion Payment*, Nov. 7, 2023, https://consumerwatchdog.org/accountability/former-city-lawyer-fbi-determined-feuer-lied-about-knowledge-of-extortion-payment/. (Attached as Exhibit 30 to the Flanagan Decl.)

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

widely disseminated both within the legal community[101] and to the public at large.[102] Mr. Paradis's allegations must be accorded their proper weight, given that prosecutors extensively relied on his testimony and assistance in securing multiple convictions related to the scandal.[103] The public has an overwhelming interest in the FBI agent's statements and the evidence that was cited in support in the warrant materials.

**E.    Public Access to Warrant Materials Is Necessary to Answer Critical Questions Remaining After the Close of the Federal Investigation**

36.    As detailed throughout this Application, public access to the search warrant materials is absolutely critical for three reasons. First, the scandal that embroiled the City Attorney's Office and DWP is nearly unprecedented in scope, resulting in countless millions of dollars of wasted taxpayer money, yet substantial questions concerning who did what and at whose direction remain. The scandal appears to have corrupted these agencies up to the highest levels, and the public has both a right and a need to access materials that enable them to better understand the scope of the government's misconduct here and to evaluate how to prevent such misconduct in the future.

37.    Second, the public interest in records and information reflecting Mr. Feuer's knowledge of and/or involvement in the scandal is at its zenith right now, in the context of Mr. Feuer's active Congressional campaign. The public cannot wait years to find out whether or not Mr. Feuer bears culpability for the scandal, at which

---

[101] Devon Belcher, *Former LA city attorney Feuer lied under oath, disbarred attorney tells judge*, Daily Journal, Nov. 8, 2023, https://www.dailyjournal.com/articles/375584-former-la-city-attorney-feuer-lied-under-oath-disbarred-attorney-tells-judge (Paradis told the "judge that former city attorney Mike Feuer lied to a federal grand jury and that this information was contained in an affidavit from the FBI."). (Attached as Exhibit 31 to the Flanagan Decl.)

[102] *Key lawyer*, *supra* note 29 ("FBI Agent Andrew Civetti testified in an affidavit that Feuer 'perjured himself' and 'testified falsely,' Paradis told Blumenfeld.").

[103] Paradis Sentencing Transcript, 17:8–11; 17:21–18:1, *supra* note 3.

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

point he could already be serving in Congress. The public has a particular need for the warrant materials because Mr. Feuer has relied on the USAO letter, which stated that "as of the date of this letter" Mr. Feuer was "not under any ongoing investigation," as evidence of his lack of wrongdoing.[104] The public needs to assess the evidence possessed by the USAO in order to evaluate the propriety of its decision not to pursue charges against Mr. Feuer.

38.    Third, public access here is essential to enabling the public to monitor the charging decisions of the USAO. As reported by Applicant *Los Angeles Times*: "the end of the government's case is prompting a new round of questions. Critics ask why certain individuals — including high-ranking personnel in the city attorney's office who remain unidentified in prosecutors' public court filings — escaped punishment."[105] The public is left to wonder whether Mr. Peters, as the lowest ranking of the three senior City Attorney's Office officials, "was the fall guy acting at the direction and for the benefit of his bosses [who] have not been held to account."[106]

39.    Despite pleading guilty to a felony, Mr. Peters was sentenced to only nine months of home detention, with Judge Blumenfeld explaining the light sentence by "suggest[ing] that he weighed Peters' behavior against his concerns about 'others'. . . . [and] not[ing] the number of attorneys involved in the fraud."[107] At Mr. Paradis's sentencing, Judge Blumenfeld similarly remarked that "too few people have been held to account," and that prosecutors did not "succeed in sweeping up all of the dirt that needs to be swept up."[108] Reports have also noted that "people in the Biden administration [may] have told the U.S. Attorney's Office to take it easy

---

[104] *Key lawyer*, *supra* note 29.

[105] *Questions, anger*, *supra* note 1.

[106] Paradis Sentencing Transcript, 20:1–3, *supra* note 3. Mr. Clark retired in October 2020, and continues to collect a "$3,587-a-month pension from the city[.]" *Questions, anger*, *supra* note 1.

[107] *Questions, anger*, *supra* note 1.

[108] Paradis Sentencing Transcript, 34:24–35:2, *supra* note 3.

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

on pursuing corruption in the City because it was creating an unfavorable political environment."[109] Mr. Paradis's attorney has stated that "many of the other wrongdoers have not even been charged and face no criminal penalties."[110] The public has a strong interest in assessing why prosecutors made the charging decisions they did, particularly where those decisions were made about highly influential and powerful public officials who were not charged, while lower ranking officials were charged.

### REQUEST FOR RELIEF

40.    An Order unsealing the warrant materials to the fullest extent possible.

41.    An Order awarding any other and further relief as may be just and proper.

DATED: February 21, 2024            **CONSUMER WATCHDOG**

                                                    */s/ Ryan Mellino*
                                                    Jerry Flanagan (SBN: 271272)
                                                    jerry@consumerwatchdog.org
                                                    Benjamin Powell (SBN: 311624)
                                                    ben@consumerwatchdog.org
                                                    Ryan Mellino (SBN: 342497)
                                                    ryan@consumerwatchdog.org
                                                    6330 San Vicente Blvd., Suite 250
                                                    Los Angeles, CA 90048
                                                    Tel: (310) 392-0522
                                                    Fax: (310) 392-8874

                                                    **BLOOD HURST & O'REARDON, LLP**

                                                    */s/ Timothy G. Blood*
                                                    Timothy G. Blood (SBN: 149343)

---

[109] Jack Humphreville, *Scandal Happened on Mike Feuer's Watch*, CityWatch Los Angeles, Sept. 21, 2023, https://www.citywatchla.com/la-watchdog/27648-scandal-happened-on-mike-feuers-watch. (Attached as Exhibit 32 to the Flanagan Decl.)

[110] Paradis Sentencing Memorandum, 26:17–18, *supra* note 44.

TBlood@bholaw.com
501 W. Broadway, Suite 1490
San Diego, CA 92101
Tel: (619) 338-1100
Fax: (619) 338-1101

**LAW OFFICES OF KELLY AVILES**

*/s/ Kelly Aviles*
Kelly Aviles (SBN: 257168)
kaviles@opengovlaw.com
1502 Foothill Blvd., Suite 103-140
La Verne, CA 91750
Tel: (909) 991-7560
Fax: (909) 991-7594

**LOS ANGELES TIMES COMMUNICATIONS LLC**

*/s/ Jeff Glasser*
Jeff Glasser (SBN: 252596)
jeff.glasser@latimes.com
2300 E. Imperial Highway
El Segundo, CA 90245
Tel: 213-237-7077

*Attorneys for Applicants*

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS

## CERTIFICATE OF SERVICE

I hereby certify that on February 21, 2024, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the email addresses denoted on the attached Electronic Mail Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 21, 2024.

*/s/ Jerry Flanagan*
Jerry Flanagan (Bar No. 271272)
jerry@consumerwatchdog.org
6330 San Vicente Blvd., Suite 250
Los Angeles, CA 90048
Tel.: (310) 392-0522
Fax: (310) 392-8874

APPLICATION OF CONSUMER WATCHDOG AND LOS ANGELES TIMES
COMMUNICATIONS LLC TO UNSEAL COURT RECORDS